UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HENDY COHN, individually and
on behalf of those similarly situated,

                                                       Case No.: 14-cv-2855(RER)

                Plaintiff,

  v.

NEW CENTURY FINANCIAL SERVICES, Inc.;
PRESSLER & PRESSLER, LLP


                Defendants.
-----------------------------------------------------------------X

## **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Shimshon Wexler
The Law Offices of Shimshon Wexler,PC
216 West 104th St. #129
New York, NY 10025
(212) 760-2400
(917) 512-6132 (fax)
swexleresq@gmail.com


Jacob J. Scheiner, Esq.
Scheiner & Scheiner
Attorneys at Law
1 Club Drive, Suite 5BR
Woodmere, New York 11598
(516) 284-6282
Jacob@scheineresq.com

*Attorneys for plaintiff*

1

## I. Introduction

Plaintiff, Hendy Cohn ("Plaintiff"), asserts that Defendants New Century Financial Services, Inc. ("New Century") and Pressler & Pressler, LLP ("Pressler"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 and New York's Unfair and Deceptive Act Statute- General Business Law §349 ("GBL 349").

Plaintiff alleges that the FDCPA violations arise from two separate activities by Pressler. The first activity of Pressler that is alleged to have violated the FDCPA, is that it wrote a collection letter to Plaintiff indicating the current balance on Plaintiff's New Century account was $7,844.28, by writing, "amount sought: $7,844.28 which includes filing and service costs of $175.00." Plaintiff alleges that this is an inflated current balance, because Plaintiff did not owe the $175.00 at the time of the sending of the letter. The second FDCPA violation is alleged to have arisen when Pressler filed a lawsuit against Plaintiff on behalf of New Century, while its registration to conduct business in New York had been revoked. Plaintiff alleges that this also violates GBL 349.

## II. Standard of Review

As this is a motion for judgment on the pleadings, the Court is to use the same standard as it would for a motion to dismiss, since both standards are the same. *Johnson v. Rowley,* 569 F.3d 40, 43–44 (2d Cir.2009). The Court must assume the truth of "all well-pleaded, non conclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its

face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)—that is, it must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. However, the court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). On the other hand, "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011). All that is required is "a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.*

### III. DEFENDANTS' FDCPA VIOLATION

#### A. THE FDCPA IN GENERAL

In determining whether a debt collector has violated the FDCPA, courts apply an objective standard measured by how the "least sophisticated consumer" would interpret the communication. *See, e.g., Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) (adopting least sophisticated consumer standard for § 1692e); *Russell,* 74 F.3d at 34 (applying least sophisticated consumer standard to a case under § 1692g) *Greco v. Trauner, Cohen & Thomas, L.L.P,* 412 F.3d 360, 363 (2d Cir.2005) (applying least sophisticated consumer standard for § 1692e); *Ellis v. Solomon and Solomon, P.C.* 591 F.3d 130 (2d Cir. 2010) (applying least sophisticated consumer standard to a case under § 1692g). Savino v. Computer Credit, Inc. 164 F.3d 81 (2d Cir 1998) (applying least sophisticated consumer standard to a case under § 1692g). That it may be obvious to specialists or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's "power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom

3

he transacts business. Laws are made to protect the trusting as well as the suspicious."*Federal Trade Comm'n v. Standard Educ. Soc'y,* 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937).

## B. THE DEFENDANTS' FDCPA VIOLATION BY USING THE LANGUAGE "AMOUNT SOUGHT: $7,844.28 WHICH INCLUDES FILING AND SERVICE COSTS OF $175.00"

The Defendants violated 1692e(2)(A) by claiming in the collection letter attached as Exhbiti A to the Complaint, "amount sought: $7,844.28 which includes filing and service costs of $175.00." At the time of the sending of the collection letter, New Century, which was represented by Pressler, was not entitled to the $175, because those fees hadn't been awarded by the Court. Thus, the collection letter gave the false representation that $7,844.28 was due when, in fact, it was not. This is a violation of 1692e(2)(A), which prohibits "The false representation of the character, amount or legal status of any debt."

Similarly, the collection letter violated 1692f(1), because the collection letter attempted to collect an amount not authorized by the agreement creating the debt nor allowed by law.

"Under New York law, a party is not liable for court costs unless and until there is a judgment in favor of the opposing party. *See* N.Y.C.P.L.R. § 8101 ("The party in whose favor a judgment is entered is entitled to costs in the action....").... By including court costs in the debt it reported to credit reporting agencies, Resurgent LP misrepresented the amount of the debt. The FDCPA specifically prohibits such misrepresentations. *See* 15 U.S.C. § 1692e(2)(A) (prohibiting the false representation of "the character, amount, or legal status of any debt")." *Fritz v Resurgent Capital Services, LP,* 955 F.Supp.2d 163, 171-172 (E.D.N.Y. 2013)

Defendants attempt to argue that they were required to include the entire amount that they were seeking in the Complaint in the collection letter, based on CPLR 3215(g)3(i). That provision states, "When a default judgment based upon nonappearance is sought against a natural person in an action based upon nonpayment of a contractual obligation an affidavit shall be submitted that additional notice has been given by or on behalf of the plaintiff at least twenty days before the entry of such judgment, **by mailing a copy of the summons** by first-class mail..................." (emphasis supplied).

This argument fails for 3 reasons. Firstly, the plain language of this provision of the statute only requires that the notice include a copy of the summons. TD Banknorth, NA v Olsen 112 AD 3d 1169, fn1 (3d Dept 2013). It simply does not require the sending of a collection letter containing language as to what Defendants were seeking in the event a judgment was awarded.

Secondly, according to Defendants' own interpretation, Defendants were actually seeking, and did indeed obtain, a larger judgment amount than the letter requested. Thus they did not even comply with the provision of the statute according to their own interpretation of it. The letter sought $7,844.28 and New Century obtained a judgment for $7,934.28. *See* Exhibit 5 to Warshaw Declaration. Defendants should not be able to escape FDCPA liability by claiming compliance with CPLR 3215 when they did not comply with it according to their own interpretation.

Lastly, Defendants could have easily complied with both the FDCPA and their own interpretation of the CPLR provision. Defendants could have written that the amount due at the time of sending of the letter was $7,669.28 and if the Court were to award judgment they would

5

be entitled to an additional $265.00 in costs and disbursements. (As stated above, Defendants did not even comply with their own interpretation of the statute because they wrote $175.00.)

Instead, the Defendants wrote on the collection letter, "amount sought: $7,844.28 which includes filing and services costs of $175.00." This language will confuse anybody and certainly will confuse the least sophisticated consumer as to what the amount of the debt is at the time this letter was sent. Based on the letter, consumers will of course believe that $7,844.28 is needed to clear the debt even though in actuality only $7,669.28 is needed to clear the debt at the time of the letter. Plaintiff claims that Defendants falsely indicated the balance on the collection letter by including amounts that were not yet due at the time that the collection letter was sent, and amounts that may have never been due.

The above violation is material under *Gabriele v American Home Mortgage Servicing, Inc.*, 503 Fed. Appx. 89, 94 (2d Cir. 2012). Specifically, Gabrielle held that "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." In this case, Plaintiff claims that the collection letter falsely conveyed that the current balance on the account is $7,844.28 when it was really $7,669.28.

Even if the Court were to accept the Defendants' interpretation—and it should not—that they were just letting the consumer know what would be awarded, the Defendants still violated the FDCPA, because as shown above, they were really seeking an additional $265.00, while in the collection letter they wrote that they were seeking an additional $175.00. This is a misleading statement as to the legal status and character of the debt—namely, that $175.00 would be awarded and not the real amount of $265.00.

Defendants' argument that Plaintiff has not alleged that the debt at issue is a consumer debt as defined by the FDCPA, is belied by the fact that that the Summons, which is attached in the exhibits to the Warshaw declaration as Exhibit 2, has the prominent heading, "CONSUMER CREDIT TRANSACTION." CPLR 105 (f) defines the term "consumer credit transaction" to mean, a transaction wherein credit is extended to an individual and the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes. The FDCPA defines "debt" in 1692a(5) to mean, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." The Complaint alleges in Paragraph 17 and 18 that the debt arose from purchases for personal, family or household purposes.

## C. PRESSLER VIOLATED THE FDCPA AND GBL 349 BY CONDUCTING BUSINESS WHILE ITS REGISTRATION WAS REVOKED

Pressler is a foreign limited liability partnership. It filed a lawsuit against Plaintiff when its authority to conduct business in New York had been revoked. Pressler's registration had been revoked on July 25, 2012 until approximately September 19, 2014—which is the date the Warshaw affidavit indicates registration had been reactivated. Pressler provides no explanation as to why it took more than 4 months from the time this lawsuit was filed to register to do business in New York. "Fairness and justice require that when a foreign corporation comes into our State to conduct business under similar methods and to the same degree it does in its own state, or as do our domestic corporations, that such a corporation should be subject to New York

7

laws and regulations as a recompense for the advantages enjoyed by it." *William L. Bonnell Co. v. Katz*, 23 Misc.2d 1028, 1031, 196 N.Y.S.2d 763, 768 (Sup. Ct. 1960).

1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken." A minority of Courts hold that only threats to take illegal action violate the FDCPA, but the actual taking of illegal action does not. This Court should not side with that minority view. The Court should side with the majority view which holds that the taking of an illegal action violates 1692e(5). As stated in *Bradshaw v Hilco Receivables, LLC* 765 F Supp 2d, 719, 730 (D. Md. 2011):

"[T]he majority view is reflected by the United States Court of Appeals for the Fifth Circuit, as well as district courts in Massachusetts, Washington, Ohio, and Arizona which have held that Section 1692e(5) protects consumers against debt collectors that actually complete illegal acts as well as against debt collectors who merely threaten to complete those acts. *See Poirier v. Alco Collections, Inc.,* 107 F.3d 347, 350–51 (5th Cir.1997); *Harrington v. CACV of Colorado, LLC,* 508 F.Supp.2d 128, 136–37 (D.Mass.2007); *Sprinkle v. SB & C Ltd.,* 472 F.Supp.2d 1235, 1247 (W.D.Wash.2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide *more* protection to debt collectors who violate the law than to those who merely threaten or pretend to do so.... The opposite conclusion would be akin to attaching liability to one who merely threatens a tortuous act while absolving one who unabashedly completes is. It is safe to say that such an interpretation veers sharply from the legislative purpose behind the FDCPA."); *Foster v. D.B.S Collection Agency,* 463 F.Supp.2d 783, 803 (S.D.Oh.2006); *Marchant v. U.S. Collections West, Inc.,* 12 F.Supp.2d 1001, 1006 (D.Ariz.1998) ("defendants assert that they made no threat; they simply took action. I think that such argument

elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority ... would defy the very purpose of the section.")."

"This Court finds the... majority view more persuasive and consistent with legislative intent. Accordingly, this Court interprets Section 1692e(5) of the FDCPA to include the *taking* of "action that cannot legally be taken." It simply strains credulity to believe that the FDCPA, a law that safeguards consumers from abusive and deceptive debt collection practices by debt collectors, *See United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir.1996), would prohibit threats of illegal actions but not the illegal actions themselves: Indeed, in the context of evaluating a claim under Section 1692e(5) of the FDCPA, the Fourth Circuit has cautioned against taking such a "hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world." *Id.* at 138. To find otherwise would undermine the consumer protection goals of the FDCPA."

In our case, Pressler had an inactive registration with the New York State Department of State when it filed a lawsuit against Plaintiff. This was an action that Pressler could not legally take. In Hilco, the Court found that collector violated 1692e(5) by failing to obtain a Maryland debt collection license. This Court should find that Pressler violated 1692e(5), by filing debt collection lawsuits against Plaintiff and the class members in New York when its registration was revoked. *See also Williams v. Goldman & Steinberg, Inc.*, 03–CV–2132 (DGT), 2006 WL 2053715, at *1, 2006 U.S. Dist. LEXIS 50222, at *2 (E.D.N.Y. July 21, 2006) ("I conclude that there was a violation of the FDCPA because the defendant did not have a license when it sent the

9

Collection Letter to a New York City resident, as required by regulations of the City of New York.").

To state a claim under G.B.L. § 349, Plaintiff must allege that, "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009)

First, Plaintiff alleges that the act or practice was consumer-oriented, by alleging that Pressler filed collection lawsuits against hundreds of consumers, including Plaintiff, while it was not registered to do business. (Compl.¶ 27.) This is "consumer oriented", because it is likely to have a broader impact on consumers at large. *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 24, 623 N.Y.S.2d 529, 647 N.E.2d 741. Second, Plaintiff sufficiently alleges that the act or practice was misleading in a material respect, because a consumer would believe that Pressler was registered to do business in New York at the time that it sued Plaintiff, when, in fact, it was not. Lastly, Plaintiff sufficiently alleges that she was injured as a result of Pressler's failure to be registered because she was subjected to a lawsuit that she never should have been subjected to.

## CONCLUSION

Defedants' motion for judgment on the pleadings should be denied in its entirety.

Dated: November 24, 2014

_____
Shimshon Wexler