**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HENDY COHN, on behalf of herself and the
class defined herein,

                        Plaintiff,

v.

NEW CENTURY FINANCIAL SERVICES,
INC., and PRESSLER & PRESSLER, LLP,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CASE NO.: 1-14-CV-02855(RER)

**MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY FEES AND REPRESENTATIVE AWARD**

Plaintiff Hendy Cohn, on behalf of herself and the class defined herein, respectfully submits, through counsel, this Memorandum in support of Final Approval of Class Settlement.

**I. Introduction**

This court granted preliminary approval of the class settlement on January 6, 2017 (Dkt. No. 36). As shown below, notice has been provided to the class members in accordance with the Court's order. No class members have objected to the settlement and 4 class members have acted to exclude themselves from the class.

The proposed Settlement provides for a recovery of money damages by individual class members. Each member of the Settlement Class who submitted a timely claim form will receive her pro rata share of the $50,445.00 settlement fund. To date, 842 Settlement Class members have submitted a timely form; meaning, each member is expected to receive $59.91.

Furthermore, The Parties and their respective counsel have negotiated in good faith, prior to the fairness hearing and have agreed that, subject to the Court's approval, the sum of $40,000.00 represents reasonable reimbursement for attorneys' fees, costs, and expenses associated with this action. The attorney fees sought are reasonable and supported by the time

records of the attorneys. Accordingly, the settlement should be approved.

## II. Background and Summary of Settlement

Plaintiff commenced this action on May 6, 2014 against Defendants New Century Financial Services, Inc. and Pressler & Pressler, LLP ("Defendants") alleging that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect unauthorized costs and fees over and above the amount of the alleged debt (Dkt. No. 1). Defendants filed their respective answers and affirmative defenses on July 14, 2014 (Dkt Nos. 12, 13), and thereafter moved for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) (Dkt. No. 20). The Court dismissed Plaintiff's FDCPA § 1692e(5) and GBL § 349 claims, but found the disputed language in Defendants' collection letter did support a FDCPA §§ 1692e(2)(A) and 1692f(1) violation (Dkt. No. 29).

The Court's decision led to a series of arm's-length negotiations between the parties, culminating with settlement of all remaining claims and the filing of Plaintiff's Motion for Preliminary Approval of Class Settlement Agreement (Dkt. No. 35). On January 6, 2017, the Court entered its Preliminary Approval Order (Dkt. No. 36) setting a final hearing on the fairness and reasonableness of the Agreement for April 27, 2017. This memorandum is filed pursuant to the Preliminary Order and in advance of the final hearing.

The Settlement Class consists of all persons to whom Defendant, Pressler & Pressler, LLP, from May 6, 2013 through July 16, 2016, sent to a New York address a collection letter with respect to a consumer debt where the collection letter included language stating that there was an "Amount Sought: $[amount] which includes filing and service costs of $[amount]" and the letter was not returned as undeliverable to Pressler & Pressler, LLP.

As set forth in the Settlement Agreement (Dkt No. 35-1), the Settlement provides for the creation of a settlement fund totaling $50,445. From the fund, payment will be paid, on a *pro rata* basis, to those class members to whom notice was successfully sent and who did not timely elect to opt-out of the settlement, and who timely and correctly filed a claim form. Defendant has provided notice of the Settlement through a Settlement Administrator via direct mail and agreed to fund the administrative costs of implementing the Settlement.

842 class members timely and correctly filed a claim form. Accordingly, each will receive a check in the amount of $59.91. Funds from settlement checks that are not negotiated within 90 days of issuance will be distributed as a *cy pres* award to the National Consumer Law Center ("NCLC").

The named Plaintiff will receive up to $2,000, subject to Court approval, for her individual statutory damages and participation in this litigation. Defendant has also agreed that Plaintiff's counsel may petition for attorney fees and costs not to exceed $40,000.00.

The Class Members were notified of the proposed settlement by mailing of a detailed notice (the "Notice") advising them of the settlement terms and their eligibility to participate in the settlement. Defendants have agreed to pay all notice and distribution costs.

The Affidavit of Eric Schachter, a Case Manager of the Settlement Administrator here, establishes that notice of the class action and settlement was mailed to the Class Members in accordance with the Court's Preliminary Approval Order. Copies of the Notice were mailed on February 6, 2017 to 13,451 Class Members whose names and addresses were provided by Defendant's counsel. As of April 3, 2017, 684 notices were returned as undeliverable with no forwarding address or further information provided by the United States Postal Service ("USPS").

The Settlement provides a meaningful cash recovery, in excess of the statutory maximum, to the Settlement Class. Accordingly, the Settlement is fair, reasonable, and adequate. It satisfies all the prerequisites for final approval required by Rule 23, the Second Circuit, and Due Process. For these reasons, and as discussed below, this Court should grant final approval.

### III. Class Action Approval

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation. Third, § 30.42 (1995)); see also *D'Amato*, 236 F.3d at 85. "Absent fraud or collusion. [courts] should be hesitant to substitute [their] judgment for that or the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., 2007 WL 2230177. at *4; see also *In re Top Tankers, Inc. Sec. Litig*., No. 06cv13761 (CM), 2008 WL 2944620 at *3 (S.D.N.Y. July 31. 2008); *Ingles v. Toro,* 438 F. Supp. 2d 203, 211 (S.D.N.Y. 2006). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; see also *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05cv10240 (CM), 2007 WL 2230177 at *4 (S.D.N.Y. July 27, 2007): *Spann v. AOL Time Warner. Inc*., No. 02cv8238 (DLC), 2005 WL 1330937 at *6 (S.D.N.Y. June 7, 2005). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96. 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78. 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth

in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *Shepard v. Rhea*, No. 12-CV-7220 (RLE) (S.D.N.Y. Nov. 7, 2014).

### IV. Approval of the Proposed Settlement

#### A. *The Settlement is Procedurally Fair*

"A proposed settlement is procedurally fair when it is reached through arm's length negotiations between experienced, capable counsel and after meaningful discovery." *In re Wachovia Equity Sec. Litig.*, No. 08 civ. 6171 (RJS), 2012 WL 2774969, at *3 (S.D.N.Y. June 12, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir.2005), cert. denied, 544 U.S. 1044, 125 S.Ct. 2277, 161 L.Ed.2d 1080). These elements are amply satisfied here. The parties, represented by highly experienced and capable counsel, engaged in significant arm's length negotiations, as well as substantial and meaningful discovery efforts. Accordingly, the proposed settlement is procedurally fair.

#### B. *The Settlement is Substantively Fair*

The Second Circuit has enumerated nine factors, known as the Grinnell factors, to guide courts in evaluating the fairness of a proposed settlement: (1) The complexity, expense, and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.] *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974). In sum, the proposed settlement of the class action must be fair, reasonable, and adequate.

**1.** *The complexity, expense, and likely duration of the litigation;*

Even though this case is not factually complex, it does raise significant legal questions regarding whether the Defendants' conduct violated the FDCPA, much of which has already been thoroughly briefed. While class certification and liability could both be decided on the record, the issue of damages would in all likelihood require motion practice and expert testimony from accountants, because there would likely be significant disagreement over what constitutes net worth under the statute and relevant case law. These disagreements led the parties to discuss settlement based on fairness for each class member, and the potential liability of both Defendants, rather than arguing over the competing interpretations of "net worth" under the FDCPA. In sum, continued litigation would likely be very costly, and absent settlement a final adjudication likely would not take place for some time. Accordingly, this factor favors approval of the settlement.

**2.** *Reaction of the Class to the settlement;*

The reaction of the Class to the settlement has been positive. There have been no objections and 4 requests for exclusion. The absence of any objections and only 4 exclusions out of 13,452 eligible Class Members weigh "heavily in favor of a strong presumption of fairness." *In re Rite Aid Securities Litigation*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003).

**3.** *The stage of the proceedings and the amount of discovery completed;*

The parties, through counsel, engaged in significant discovery, which included targeted written discovery, which ultimately assisted in determining Defendants' corporate structure and potential liability, as well as class size and net-worth information.

**4-5.** *The risk of establishing liability and damages;*

Liability is strong. This Court has already determined, in its June 7, 2016 Order (Dkt. No. 29), that the language in Defendants' debt collection letters supports a violation the FDCPA. The greater risk here is determining the appropriate amount of damages for the Class Members. Establishing damages is within the discretion of the fact finder and there is a real question as to what a jury would award for a "letter violation." Moreover, any dispute over the Defendants' net worth and how it relates to the maximum cap on statutory damages would have to be litigated either before or concurrent with the question of damages. In other words, there is no telling what a fact finder would award – there is no statutory minimum and the statutory maximum has not been definitively established.

> **6.** *The risks of maintaining the class action through the trial;*

During trial, the unexpected can and does happen, and must be taken into account: class representatives sometimes move out of the jurisdiction. Superseding case law or legislative action could have an effect on damages or even on Defendants' ultimate liability; a Defendant could file for bankruptcy. As such, these possibilities must be taken into account in evaluating a settlement's reasonableness.

> **7.** *The ability of Defendants to withstand a greater judgment;*

The Defendants' liability is limited by statute. The settlement provides relief to the Class in excess of the statutory maximum, Therefore, Plaintiff does not believe that this is a significant factor in determining the fairness of the settlement.

> **8-9.** *The range of reasonableness of the settlement in light of the best possible recovery; all the attendant risks; opinions of class counsel*;

This factor also weighs towards settlement. Although Pressler & Pressler, LLP, is one of the most recognizable collection agencies in the United States, a jury could be convinced to award far less than the maximum individual recovery of $1,000 to each class member for a so-

called "letter violation" like the one here. In other words, a jury could conceivably award as little as one dollar. The settlement fund here represents more than 5-times the maximum statutory damages that could assessed against Pressler & Pressler, LLP and accurately represents a fair and reasonable recovery against Defendant New Century Financial Services, Inc.

Defendants agreed to this settlement for economic reasons and to avoid the burdens of litigation and possible appeals without a specific admission of wrongdoing. Nevertheless, it resulted in Plaintiff and the Class achieving through settlement a recovery that could be difficult to achieve through a judgment at trial.

In addition to the relief to the class members, the named Plaintiff will receive $2,000, subject to Court approval, for her individual statutory damages and participation in this litigation. Defendants have also agreed that Plaintiff's counsel should receive $40,000 in attorneys' fees and costs. These payments are, of course, subject to court approval. For these reasons, the settlement is reasonable and favorable, and class counsel has endorsed it.

### V. The Attorney's Fees and Costs Sought by Plaintiff are Fair and Reasonable

Plaintiff's counsel respectfully petition this Court for an attorney fee award of $40,000.00. Plaintiff's counsel have calculated their lodestar in this case to be above $60,000. Nevertheless, as part of the settlement, Plaintiff has agreed to petition the Court for a substantially lower amount. Defendants, for their part, have agreed not to object to a petition for attorney fees and costs not exceeding $40,000.00. No Class members have filed any objections to the Settlement Agreement or to the fees sought.

**A.** *Attorney fees in a FDCPA case.*

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney fees to a successful consumer.

> . . . any debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages] [statutory damages] and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. §1692k(a)(3).

Plaintiff has obtained the maximum amount of statutory damages to which she is entitled and accordingly her recovery has been excellent. Plaintiff has fully prevailed in this action in that she sought only statutory damages in this case and has recovered the more than the maximum amount of statutory damages provided for by law.

In litigation pursuant to the Fair Debt Collection Practices Act, the Second Circuit stated "the award of attorney's fees to Plaintiff for a debt collector's violation of "any provision" of the FDCPA is mandatory" *Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 28 (2d Cir. 1989), citing *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). "Under the Fair Debt Collection Practices Act ("FDCPA"), the prevailing Plaintiff is entitled to 'a reasonable attorney's fee as determined by the court.' 15 U.S.C. §1692k(a)(3). Such an award is mandatory under the FDCPA." *Edwards v. National Business Factors, Inc*., 897 F.Supp. 458, 459 (D.Nev. 1995) (citations omitted).

   **B.**  *The fees in this case are reasonable.*

"If [ ] money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean v. City of New York,* 233 F.R.D. 377, 392 (S.D.N.Y. 2006). In this litigation, the fees were negotiated separately from the settlement to the Class. Hence, the attorney's fees to be awarded, whatever the amount, will in no way

diminish the benefit to the Class under the Settlement Agreement, which this Court has already found fair, reasonable, and adequate (Dkt. No. 36).

Nevertheless, under *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court has an obligation to ensure that the payment to class counsel is fair and reasonable. Plaintiff respectfully submits that, under Second Circuit law on attorney fees, Plaintiff's counsel's petition for $40,000.00 is fair and reasonable because of the complexity of the issues involved and because of the level of experience of Plaintiff's attorneys.

At present, the Second Circuit's latest word on the issue of assessing the reasonableness of attorney fees appears to be *Millea v. Metro-North R. Co.*, 658 F.3d 154 (2d Cir. 2011). There, the Second Circuit held that—

> Both this Court and the Supreme Court have held that the lodestar – the product of a reasonably hourly rate and the reasonable number of hours required by the case – creates a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County. Of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); see While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error. . . .

Earlier, in *Arbor Hill*, the Second Circuit clarified the factors a district court ought to consider when exercising its considerable discretion in awarding attorney's fees. A court is to bear in mind—

> "all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*[1] factors; it should also

---

[1] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The Johnson factors that may be considered [when adjusting a lodestar amount] are 1) the time and labor required; 2)

> bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the presumptively reasonable fee.

*Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).

Plaintiff's counsel Shimshon Wexler and Jacob Scheiner calculate their lodestar figure to be above $60,000. However, the parties have agreed to limit their fees and expenses to $40,000. Under the adjustment factors identified in *Johnson v. Georgia Highway Express, Inc.*, the fees and costs agreed upon by the parties are fair and reasonable.

### VI. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the settlement, the attorney fees and costs, and the class representative fee.

Dated: April 4, 2017

>By:/s/ Shimshon Wexler
>Shimshon Wexler
>The Law Offices of Shimshon Wexler, PC
>216 West 104th St., #129
>New York, NY 10025
>(212)760-2400
>(917)512-6132 fax
>swexleresq@gmail.com

---

the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Miltland Raleigh-Durham v. Myers,* 840 F. Supp. 235 (S.D.N.Y. 1993).

Jacob Scheiner, Esq.
LAW OFFICES OF JACOB J. SCHEINER, PC
568 Church Ave
Woodmere, NY 11598
Tel: (516) 284-6282
E-Mail: Jacob@scheineresq.com

*Attorneys for Plaintiff*